AMIEL L. WADE | SBN 184312
EVAN LIVINGSTONE | SBN 252008
WADE LAW GROUP - APC
262 East Main Street
Los Gatos, CA 95030
Direct Line:(408) 884-4018
Telephone: (408) 842-1688
Facsimile:  (408) 852-0614
Email: elivingstone@wadelitigation.com

Attorneys for Plaintiff Eftychios Theodorakis

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EFTYCHIOS THEODORAKIS<br><br>Plaintiff,<br><br>vs.<br><br>DFINITY STIFTUNG, DOMINIC WILLIAMS, and GIAN BOCHSLER<br><br>Defendants. | Case No. 3:23-cv-02280<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>1. Conversion<br>2. Trespass to Chattels<br>3. Negligence<br>4. Civil Penalties Penal Code § 496(c)<br>5. Unfair Competition - Bus & Prof § 17200<br>6. Intentional Misrepresentation<br>7. RICO.–18 U.S. Code § 1962(a)<br>8. RICO.–18 U.S. Code § 1962(b)<br>9. RICO.–18 U.S. Code § 1962(c)<br>10. RICO.–18 U.S. Code § 1962(d)<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.      This civil action alleges that Defendants DFINITY STIFTUNG (AKA the DFINITY Foundation or DFINITY), DOMINIC WILLIAMS, and GIAN BOCHSLER, used the internet to carry out a fraudulent scheme to promote and sell millions of ICP Tokens, a form of cryptocurrency created by DFINITY, in a fraudulent manner that damaged the value of 54,274 ICP Tokens belonging to Plaintiff EFTYCHIOS THEODORAKIS, and millions of ICP Tokens belonging to other members of the public, while reaping billons of dollars in profits for Defendants.

2.      Defendants DFINITY Stiftung, Dominic Williams and Gian Bochsler then used cryptocurrency exchanges such as Coinbase, and financial institutions such as First Republic

Bank, to transfer the proceeds of their fraudulent scheme to bank accounts in Europe.

3.     Defendants' conduct was fraudulent because they mislead the public that DFINITY Stiftung, and its insiders such as Dominic Williams and Gian Bochsler could not sell their ICP Tokens on May 10, 2021, the day that ICP Tokens first became tradable on public cryptocurrency exchanges or in the six weeks that followed. In reality, Defendants DFINITY Stiftung, Williams and Bochsler, could, and did, sell millions of ICP Tokens in that time period, making profits for themselves at the expense of investors, employees, and ex-employees.

4.     At the same time Defendants sold millions of ICP Tokens for their own benefit, Defendants employed various schemes to prevent investors, employees and ex-employees from selling their Tokens, such as tampering with the seed phrases investors needed to unlock their ICP Tokens, implementing arbitrary vesting schedules immediately before the cryptocurrency launch, delaying transfer of ICP Tokens to employees and ex-employees, announcing fabricated black out periods during which employees and ex-employees could not sell their Tokens, and in the case of Plaintiff, demanding that Plaintiff sign additional agreements relinquishing Plaintiff's vested rights, before ICP Tokens were transferred to Plaintiff.

5.     These actions allowed Defendants to sell their ICP Tokens at a high price while their victims were not able to sell until the price had fallen precipitously.

6.     Defendants DFINITY Stiftung and Dominic Williams made and continue to make false statements about the not-for-profit status of DFINITY Stiftung, the purpose of a related Swiss organization, the Internet Computer Association, and the governance of the Internet Computer network, in a coordinated scheme to deceive investors about the value of ICP Tokens and its underlying technology.

7.     Defendants Dominic Williams and Gian Bochsler used the profits from their fraudulent scheme to sell ICP Tokens to invest in and consolidate control of enterprises engaged in interstate commerce including DFINITY Stiftung, the Internet Computer Association, DFINITY USA Research LLC, DFINITY Operations S.A., and the ORIGYN Foundation.

8.     Defendants' actions caused the value of ICP Tokens to collapse from a high of $750.73 per Token to approximately $3.36 per Token, which resulted in Plaintiff suffering

1    damage to his ICP Tokens in an amount of at least $33,000,000.

2                                          **JURISDICTION AND VENUE**

3               9.      This court has diversity jurisdiction pursuant to 28 U.S. Code § 1332(a)(2) based

4    on the diversity of the parties and the amount in controversy, subject matter jurisdiction pursuant

5    to 28 U.S. Code§ 1331 and 18 U.S. Code § 1964(c), and supplemental jurisdiction pursuant to

6    28 U.S. Code§ 1367.

7               10.     Venue lies in the United States District Court for the Northern District of

8    California pursuant to 28 U.S. Code § 1391(b)(1), because a substantial part of the events or

9    omissions giving rise to Plaintiff's claims occurred in the Northern District of California. Venue

10   is this district is also proper under 18 U.S. Code § 1965(a) because Defendants transact their

11   affairs in the Northern District of California.

12              11.     Divisional Assignment should be San Francisco and Oakland because a

13   substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the County

14   of San Francisco.

15                                                   **PARTIES**

16              12.     Plaintiff EFTYCHIOS THEODORAKIS is an individual, domiciled in California.

17              13.     Defendant DFINITY STIFTUNG (AKA the DFINITY Foundation) is a

18   Foundation or "Stiftung" organized under Swiss law," with its principal place of business in

19   Zurich, Switzerland. DFINITY Stiftung operates a research center in San Francisco, California.

20              14.     DFINITY Stiftung is an enterprise engaged in interstate and foreign commerce.

21              15.     Defendant DOMINIC WILLIAMS is the "Founder" and :Chief Scientist" and a

22   board member of Defendant DFINITY Stiftung. Dominic Williams is domiciled in Switzerland.

23              16.     Defendant GIAN BOCHSLER is council or board member of Defendant

24   DFINITY Stiftung. Gian Bochsler is domiciled in Switzerland.

25                                          **FACTUAL ALLEGATIONS**

26   **Williams and Bochsler Establish DFINITY Stiftung and Fund It With ICP Tokens**

27              17.     In October 2015, Defendant Dominic Williams, while residing in Palo Alto,

28   California, registered DFINITY Stiftung as a Swiss Foundation. The stated purpose of DFINITY

                                                         3

Stiftung was promotion of new technology developments and applications, in particular the promotion and maintenance of new open decentralized software architectures, particularly, the promotion of the development of the so-called DFINITY protocol and the corresponding technology as well as the promotion and support of applications using the DFINITY protocol.

18.     DFINITY Stiftung claims to be a not-for-profit organization. However, on information and belief, DFINITY Stiftung has never obtained non-profit status from the Swiss government.

19.     Defendant Gian Bochsler provided seed money to DFINITY Stiftung in 2016, and invested money in every DFINITY Stiftung fundraising round.

20.     In 2017, DFINITY Stiftung, Dominic Williams, and Gian Bochsler began to promote a new cryptocurrency called ICP Tokens (initially called DFN Tokens) as a way to raise funding for DFINITY Stiftung and Dominic Williams.

21.     For example, DFINITY Stiftung and Dominic Williams described DFINITY technology as an "intelligent decentralized cloud." (https://dfinity.org/pdf-viewer/library/an-intelligent-decentralized-cloud.pdf). DFINITY Stiftung and Williams claimed DFINITY is a mainframe computer in cyberspace, a super massive mainframe shared by the world, that was simpler to use, unstoppable and tamperproof, that DFINITY did not need backup, databases or firewalls, that DFINITY would slash enterprise IT costs by 90%, and that it was autonomous,

22.     In January 2018, Defendant Gian Bochsler officially joined DFINITY Stiftung as a member of the board of trustees. Dominic Williams and Gian Bochsler are the only officers of DFINITY Stiftung with signature authority to bind the Foundation to any contracts.

23.     Between 2017 and 2018, DFINITY Stiftung engaged in three funding rounds: a "Seed" round in 2017, a "Strategic" investment round in early 2018, and  a "Presale" round in late 2018. In these rounds, DFINITY Stiftung raised approximately $170 million by selling the right to receive ICP Tokens, which did not yet exist, in the future.

24.     In February 2020, Defendants Dominic Williams and Gian Bochsler established the Internet Computer Association ("ICA"), a Swiss membership association with the stated purpose of facilitating and encouraging productive connections and collaborations between

participants in the Internet Computer ecosystem. The ICA website falsely states,

> The independent members of the Internet Computer Association (ICA) together create an Internet Computer ecosystem with the highest possible levels of integrity. Members consist of geographically distributed and diverse businesses and nonprofit organizations, including data centers and node providers, startups building decentralized services and their investors, participants in decentralized finance, enterprises migrating to the open internet, universities and research organizatons [sic], educators and many others. The ICA continues to welcome new members that support its mission of stewarding the adoption of the Internet Computer. https://association.internetcomputer.org/become-a-member

25.     In actuality, the Internet Computer Association does not welcome or accept new members. The only members of the ICA are Dominic Williams and Gian Bochsler.

**Defendants Make False Statements Over the Internet to Promote ICP Tokens**

26.     Leading up the public launch of ICP Tokens on May 10, 2021, and continuing through the present, Defendants DFINITY Stiftung and Dominic Williams used the internet to make false statements with the intention of deceiving the public that ICP Tokens were a stable and safe investment. Defendants Dominic Willaims and Gian Bochsler are the only directors of Defendant DFINITY Stiftung who have signatory authority over the Foundation.

27.     Defendants Dominic Williams and Gian Bochsler approved, condoned, and agreed to make the following false statements. Defendants' false statements fell into three general categories:

- Defendants could not and did not sell their ICP Tokens in May 2021.

- The Internet Computer network is autonomous and not controlled by Defendants.

- DFINITY Stiftung is a not-for-profit organization.

28.     The following paragraphs are examples of Defendants' false statements, with the false facts emphasized in italics.

29.     On January 6, 2021, Defendant Dominic Williams published an article on the website Medium.com, titled, "Announcing the Internet Computer Mainnet and a 20-Year Roadmap," in which he stated:

> *The Internet Computer and its controller, the NNS, are autonomous, and by design, I emphasize that neither I nor DFINITY can control what the NNS does* — this will ultimately be a product of the tens of thousands of neurons that will exist at Genesis. The network will transition into beta when the NNS triggers the Genesis event. This will allow those who have acquired ICP utility tokens by contributing to the project, or

through community participation, to withdraw them into "voting neurons," swelling their number, which is currently in the tens, to around 50,000. Genesis will be triggered by the NNS adopting a proposal that anyone can submit. (https://medium.com/dfinity/announcing-internet-computer-mainnet-and-a-20-year-roadmap-790e56cbe04a)

30.    This statement was false, because Defendants DFINITY Stiftung and Dominic Williams, and Gian Bochsler, controlled and still control, more than half of the voting neurons in the Internet Computer network, which gives Defendants absolute control over Internet Computer network.

31.    On January 10, 2021, Defendant Dominic Williams published a "tweet" on the social media platform formerly known as Twitter in which he stated:

We're not a Silicon Valley unicorn (*the DFINITY Stiftung is a Swiss not-for-profit*, so no IPO will ever happen). *We are not a traditional cryptocurrency pump and dump.*

32.    This statement was false, because DFINITY Stiftung is not a not-for-profit organization, and Defendants' scheme to fraudulently promote and sell ICP Tokens *was* a traditional cryptocurrency pump and dump scheme.

33.    On February 23, 2021, Defendant Dominic Williams published a "tweet" on the social media platform formerly known as Twitter in which he stated:

Worth noting, *DFINITY has not got a coin in market, and are not trying to sell people coins.* This is the opposite approach to projects that push shell blockchains involving little novel R&D live so they can get tokens in market. It's ironic many people think lack of token = scam.

34.    This statement was false, because DFINITY Stiftung deposited 3,100,000 ICP Tokens to Coinbase and other cryptocurrency exchanges on May 10, 2023, the day the cryptocurrency was launched.

35.    On February 23, 2021, Dominic Williams also tweeted,

Exact. *Note DFINITY Stiftung only holds ~25% of ICP supply*, and will also share a portion of that with the Internet Computer Association formed in Geneva recently. *So we do not control the NNS at all.* Don't want whales or anyone else massively accumulating. Decentralization.

36.    These statements were false or misleading, because DFINITY Stiftung is owned and controlled by Defendants Williams and Bochsler, who together with their Foundation,

First Amended Complaint

owned and controlled, and still own and control, more than 50% of the supply of ICP Tokens,

and more than 50% of the voting neurons in the Internet Computer network.

37. On May 6, 2021, DFINITY Stiftung published an article on the website

Medium.com, titled "Understanding the Internet Computer's Network Nervous System,

Neurons, and ICP Utility Tokens," which stated:

> The Network Nervous System works by allowing users to stake ICP governance tokens to create voting neurons. *The NNS decides whether to adopt or reject proposals by watching how neurons emit votes*. Anyone can create a neuron by locking balances of the Internet Computer's native utility token (ICP) that is hosted on a ledger inside the NNS. (https://medium.com/dfinity/understanding-the-internet-computers-network-nervous-system-neurons-and-icp-utility-tokens-730dab65cae8)

38. This statement was false or misleading, because it implies that the Internet

Computer's Network Nervous System is controlled by Defendants DFINITY Stiftung, Williams

and Bochsler, who together owned and controlled, and still own and control more than 50% of

the voting neurons in the Internet Computer network.

39. On May 9, 2021, Defendant DFINITY Stiftung published a tweet on the social

media platform formerly known as Twitter which stated:

> *"The Swiss nonprofit* has just launched blockchain-based web hosting capability that aims to break Big Tech's stranglehold on the internet" https://businessinsider.com/vcs-crypto-blockchain-investment-billions-startups-dfinity-chief-2021-5 by @BusinessInsider businessinsider.com The founder of $24 billion crypto startup Dfinity thinks tech giants like AWS and Google have...*The Swiss nonprofit* which launched blockchain-based web token ICP earlier this month is now valued at around $24 billion." *https://twitter.com/dfinity/status/1391514314482372614?s=20*

40. This statement was false, because DFINITY Stiftung is not a not-for-profit

organization.

41. On May 10, 2021, Defendant DFINITY Stiftung published an article on the

website Medium.com, titled "How to Access 'Seed' and 'Airdrop' ICP Tokens and Participate in

the Internet Computer Network," which stated:

> *Seed donors will have immediate control of their neurons — they can reconfigure them, participate in governance to earn rewards, or immediately set them to dissolve so that they can recover the staked ICP tokens inside.* (https://medium.com/dfinity/how-to-access-seed-and-airdrop-icp-tokens-and-participate-in-the-internet-computer-network-e6cd663a0c3c)

42. This statement was false, because seed investors like Satoshi Kobayashi, who was

First Amended Complaint

entitled to receive 5,188,487 ICP Tokens at network launch, did not have immediate control of

their neurons, and could not immediately dissolve them and obtain their ICP Tokens. This was

not an accident. Defendants deliberately prevented these seed investors from accessing their ICP

Tokens.

43.    On May 10, 2021, Defendants caused to be published an article on the website

Messari.io, titled "An Introduction to Dfinity and the Internet Computer," which stated:

> Internet Computer Protocol (ICP) has formed the world's first web-speed, web-serving
> public blockchain network, which can grow its capacity with demand, and is *self
> governing*. Like all blockchains, it is unstoppable, and *the code it hosts is tamperproof.
> Dfinity currently has nearly 100,000 academic citations and 200 patents. There will be
> 469,213,710 ICP tokens at genesis and the token supply will be distributed as follows.*

## ⅢＭ Ｅ Ｓ Ｓ Ａ Ｒ Ｉ
### Genesis Token Allocation
Total token distribution on May 10 2021

| | Genesis Initial State Allocations | % | Number of Participants |
|---|---|---|---|
| Early Contributors | 44,575,228 | 9.50% | <50 |
| Seed | 115,986,694 | 24.72% | 370 |
| Strategic Partnerships | 32,845,140 | 7.00% | <50 |
| Presale | 23,295,828 | 4.96% | 110 |
| Strategic Partnerships | 17,795,770 | 3.79% | <50 |
| Community Airdrop | 3,763,448 | 0.80% | 50,000+ |
| Initial Community and Developer | 2,242,179 | 0.48% | <50 |
| Node Operators | 1,050,000 | 0.22% | 57 |
| Internet Computer Association | 20,000,000 | 4.26% | 1 |
| Team Members | 84,480,829 | 18.00% | 200 |
| Advisors and Other Third-parties | 11,239,705 | 2.40% | <50 |
| DFINITY Foundation | 111,938,888 | 23.86% | 1 |
| **Total** | **469,213,709** | **100.0%** | |

**Data as of:** May 10, 2021
**Source:** Dfinity, Messari

44.    The statements in this article were false, because the Internet Computer Protocol

or network is not self governing (the Internet Computer network is controlled by Dominic

Williams and Gian Bochsler), the code hosted by the Internet Computer network can be

tampered with (by Williams and Bochsler who control a majority of voting neurons), and

DFINITY does not have nearly 100,000 academic citations and 200 patents (those academic

citations and patents belong to DFINITY Stiftung's employees, not DFINITY). Also, the chart

DFINITY Stiftung published showing allocation of ICP Tokens as of May 10, 2021 is

misleading. The chart disguises the number of ICP Tokens controlled by Dominic Williams and Gian Bochsler, by dividing the Tokens they control into disparate categories.

45.     Upon information and belief, Williams and Bochsler own or control ICP Tokens in the Early Contributors category (9.50%), Seed investors category (the Strategic Partnerships category (7.00%), the second Strategic Partnership category (3.79%), the Initial Community and Developer category (0.48%), the Node Operators category (0.22%), the Internet Computer Association category (4.26%), the Advisors and Other Third-parties category (2.40%), and the DFINITY Foundation category (23.86%). Gian Bochsler also claims to be an early Seed investor meaning that he owns a percentage of the 24.72% of Tokens allocated to Seed investors.

46.     As a result, Defendants Dominic Williams, Gian Bochsler and DFINITY Stiftung owned and controlled more than 50% of the ICP Tokens minted at the cryptocurrency launch on May 10, 2021.

47.     The May 10, 2021, article published by Defendants Messari.io, also stated:

> While the unlocking schedule is publicly known for strategic investors and private sales, *the number of tokens unlocked from the Internet Computer Association, team members, advisors, early contributors, and the Foundation is unknown.* (https://messari.io/report/an-introduction-to-dfinity-and-the-internet-computer)

48.     This statement was false, because Defendants DFINITY Stiftung, Dominic Williams and Gian Bochsler knew precisely the number of tokens unlocked from the Internet Computer Association, team members, advisors, early contributors, and the DFINITY Foundation, and were thus able to sell as many ICP Tokens as possible upon network launch on May 10, 2021, and during the following six weeks, before seed investors like Satoshi Kobayashi, DFINITY employees and ex-employees could sell their ICP Tokens.

49.     On May 18, 2021, Defendant Dominic Williams published a "tweet" on the social media platform formerly known as Twitter in which he stated:

> For regulatory reasons, *the foundation and key early team members were locked up at launch for a week* (it's the reverse of what people think). (https://twitter.com/dominic_w/status/1394744099278790657)

50.     This statement were false and misleading, because ICP Tokens owned or controlled by DFINITY Stiftung, Dominic Williams and Gian Bochsler were transferred to

1   cryptocurrency exchanges like Coinbase, and sold to buyers, in the week of May 10, 2021 to

2   May 17, 2021.

3       51.     On June 9, 2021, Defendant DFINITY Stiftung published an article on the

4   website Medium.com, titled "Earn Substantial Voting Rewards by Staking in the Network

5   Nervous System," which stated:

6       Since Genesis, *the DFINITY Stiftung, Internet Computer Association, and their team*
7       *members and affiliates have always maintained less than 50% of the total voting power*
        *within the Network Nervous System*, ensuring control over the Internet Computer network
8       remains fully decentralized and that governance actions express the will of the broader
        community. (https://medium.com/dfinity/earn-substantial-voting-rewards-by-staking-in-
9       the-network-nervous-system-7eb5cf988182)

10      52.     This statement was false, because Defendants DFINITY Stiftung, Dominic

11  Williams and Gian Bochsler have always maintained more than 50% of the total voting power

12  within the Internet Computer's Network Nervous System, ensuring that control over the Internet

13  Computer network remains fully *centralized* and governance actions express the will not of the

14  broader community, but of Dominic Williams and Gian Bochsler.

15      53.     On June 11, 2021, Defendant DFINITY Stiftung published an article on the

16  website Medium.com, titled "The Community-Led Governance of the Internet Computer,"

17  which stated:

18      Since the Internet Computer underwent "Genesis" and became a public blockchain
        running at web speed with internet scale, *the reins of network governance are firmly in*
19      *the hands of the broader community, which controls around 60% of the voting power.*
        (https://medium.com/dfinity/the-community-led-governance-of-the-internet-computer-
20      b863cd2975ba)

21      54.     This statement was false, because Defendants DFINITY Stiftung, Dominic

22  Williams and Gian Bochsler have always maintained more than 50% of the total voting power.

23  Thus governance of the Internet Computer network has always remained firmly in the hands of

24  Dominic Williams and Gian Bochsler, not in the hands of the broader community.

25      55.     On July 2, 2021, Defendant Dominic Williams published a "tweet" on the social

26  media platform formerly known as Twitter in which he stated:

27      Just so you know, in the first week, *foundation and founders+directors locked.*
        *Foundation did not sell for several weeks*"
28      (https://twitter.com/dominic_w/status/1410936466193125383)

56.     This statement were false and misleading, because ICP Tokens owned or controlled by DFINITY Stiftung, Dominic Williams and Gian Bochsler were transferred to cryptocurrency exchanges like Coinbase, and sold to buyers, in the week of May 10, 2021 to May 17, 2021, as well as in the two weeks that followed.

57.     In July 2021, Defendant Dominic Williams published a post on Reddit.com in which he stated:

> However, regarding the *DFINITY Stiftung, it did not sell anything for 5 weeks*, and then to cover tax liabilities created by RTU schemes. *Founders and execs were locked for the first week, and since then, I have sold substantially less than 5% of my holdings. Seed participants together held 24.7% of all the ICP at Genesis, or about 117M ICP.* (https://www.reddit.com/r/dfinity/comments/pwkdz5/has_the_arkham_report_ever_been_addressed/)

58.     This statement were false and misleading, because ICP Tokens owned or controlled by DFINITY Stiftung, Dominic Williams and Gian Bochsler were transferred to cryptocurrency exchanges like Coinbase, and sold to buyers, in the week of May 10, 2021 to May 17, 2021, as well as in the four weeks that followed. Also the statement that Seed participants together held 24.7% of all the ICP at Genesis, or about 117M ICP is false, because, although seed investors may have been allocated 24.7% of ICP Tokens on May 10, 2021, some seed investors, such as Satoshi Kobayashi did not receive their ICP Tokens.

59.     On July 30, 2021, Defendant Dominic Williams published a "tweet" on the social media platform formerly known as Twitter in which he stated:

> We didn't. *The foundation didn't sell 1 token for weeks. The founders didn't sell in first week and then not much.* Demand sent price out of control and then it fell. Do I look like a founder who would want to undermine his own project.. seriously.. https://twitter.com/dominic_w/status/1421188347427442691

60.     This statement were false and misleading, because ICP Tokens owned or controlled by DFINITY Stiftung, Dominic Williams and Gian Bochsler were transferred to cryptocurrency exchanges like Coinbase, and sold to buyers, in the week of May 10, 2021 to May 17, 2021.

61.     On September 3, 2021, Defendant Dominic Williams published a "tweet" on the social media platform formerly known as Twitter in which he stated:

*DFINITY Stiftung didn't sell for 5 weeks. Founders & execs were locked at launch.*
https://twitter.com/dominic_w/status/1433832599865200644

62.     This statement were false and misleading, because ICP Tokens owned or controlled by DFINITY Stiftung, Dominic Williams and Gian Bochsler were transferred to cryptocurrency exchanges like Coinbase, and sold to buyers, in the week of May 10, 2021 to May 17, 2021, as well as in the four weeks that followed.

63.     On September 25, 2021, Defendant Dominic Williams gave an interview to Crytoslate.com, titled "Dfinity founder shoots down all 'rugpull' allegations around Internet Computer (ICP) tokens," in which he stated:

> "Certainly, some shadowy players will have then made fortunes shorting ICP, which upsets me greatly," he concluded, claiming that neither the DFINITY Stiftung nor he performed any kind of rug pull. He underlined that "the DFINITY Stiftung didn't sell any ICP for the first five weeks after Genesis, and then only to cover tax liabilities created by vesting RTUs paid to staff (Restricted Token Units)." "Founders and executives were locked up entirely for the first week. For my part, I have sold substantially less than 5% of my holdings since Genesis – after working day and night on the project for years," he added. (https://cryptoslate.com/exclusive-dfinity-founder-shoots-down-all-rugpull-allegations-around-internet-computer-icp-tokens/)

64.     This statement were false and misleading, because ICP Tokens owned or controlled by DFINITY Stiftung, Dominic Williams and Gian Bochsler were transferred to cryptocurrency exchanges like Coinbase, and sold to buyers, in the week of May 10, 2021 to May 17, 2021, as well as in the four weeks that followed.

65.     On November 30, 2021, Defendant Dominic Williams published a "tweet" on the social media platform formerly known as Twitter in which he stated:

> *Foundation didn't sell for weeks, founders locked first week, I sold less 5%*; main sellers were vested employees & Seed
> https://twitter.com/dominic_w/status/1465759067834621959

66.     This statement were false and misleading, because ICP Tokens owned or controlled by DFINITY Stiftung, Dominic Williams and Gian Bochsler were transferred to cryptocurrency exchanges like Coinbase, and sold to buyers, in the week of May 10, 2021 to May 17, 2021, as well as in the four weeks that followed.

67.     On or about November 21, 2022, Defendant Dominic Williams published comments on the internet in which he stated:

For the record. The ICA is meant to be a members organization, but there are two challenges that have put its development on the back burner: (1) there are far more important things for the team to be working on right now, (2) we could not transfer legal ownership of ICP to the ICA for tax reasons; essentially that it would involve a gift, and in Zürich, where DFINITY is based, a substantial gift tax would be involved. So for now it controls voting neurons for security purposes (distribution of keys etc) and that's it. . . . As everybody can see, *the Network Nervous System controls the Internet Computer, and it's completely transparent.* . . . We at DFINITY will remain focused on doing our best to help the ecosystem through this incredibly difficult time, and out the other side in a winning position for the benefit of everyone involved - which *is our not-for-profit purpose.*

The Internet Computer blockchain is fully controlled by a permissionless transparent DAO, called the Network Nervous System (NNS). *The governance and control of the Internet Computer is fully automated and decentralized, by design.* Anyone can propose improvements, for example by submitting motions to gather support for a particular idea, followed by the submission of compiled code that upgrades the protocol, which if adopted, will be automatically applied to the node machines hosting the network. Through the NNS, the network adaptively improves not just its efficiency, speed, functionality, and tokenomics, but also NNS governance, recursively. It is a self-improving network, and this is one of the reasons it is succeeding. Anyone can participate, either by submitting proposals, or by staking ICP and creating voting neurons.

For these reasons, it is wrong to conflate the governance of the decentralized Internet Computer network, which is self-governing, with the governance of the DFINITY Foundation. We are an independent *not-for-profit organization* that pursues a purpose, which is essentially 1. helping bootstrap the Internet Computer ecosystem, 2. developing World Computer technology and contributing it for use within the ecosystem, and 3. supporting ecosystem participants, with the ultimate overall objective of helping the ecosystem succeed as soon as possible, and driving what we call a "blockchain singularity".

Although *DFINITY is a not-for-profit organization*, with no members or shareholders, which pursues a defined purpose rather than profits, we pursue our purpose very competitively, like a tech startup. We are passionate and relentless.

https://forum.dfinity.org/t/what-is-the-internet-computer-association/15969/50

68.    Multiple statements in this post are false and misleading. The Network Nervous System that controls the Internet Computer is not completely transparent, because the network hides the identities of the individuals and entities who control the neurons that vote on network governance proposals. DFINITY Stiftung is not a not-for-profit organization. It has never been granted not-for-profit status by the Swiss government. Also, governance and control of the Internet Computer is not fully automated and decentralized. The Internet Computer is governed by two individuals, Dominic Williams and Gian Bochsler, who control a majority of the voting neurons in the Internet Computer's Network Nervous System.

69.    The statements made by Defendants which are emphasized with italics above, were false and misleading. Defendants DFINITY Stiftung, Dominic Williams, and Gian

Bochsler sold millions of ICP Tokens during the week after launch of the cryptocurrency on May 10, 2021, and the subsequent weeks. Defendants Dominic Williams and Gian Bochsler control more than 50% of the voting neurons on the Internet Computer network, giving them 100% control over the Internet Computer network. Also, DFINITY Stiftung has never not-for-profit organization status with the Swiss government.

**Defendants Sell Million of Tokens They Claimed Were Locked And Could Not be Sold**

70.     On May 10, 2021, at the same time Defendants claimed their ICP Tokens were locked up, DFINITY Stiftung transferred approximately 3,100,000 ICP Tokens to accounts which Defendants controlled at Coinbase and other cryptocurrency exchanges.

71.     Upon information and belief, Defendants Dominic Williams and Gian Bochsler also transferred millions of ICP Tokens they owned or controlled to Coinbase and other cryptocurrency exchanges on May 10, 2021, or in the week that followed.

72.     Upon information and belief, DFINITY Stiftung, Dominic Williams, and Gian Bochsler sold millions of ICP Tokens on Coinbase and other cryptocurrency exchanges in the week for May 10, 2021 to May 17, 2021, and in the five-week period that followed.

73.     Many of the ICP Tokens Dominic Williams sold in the week of May 10, 2021 to May 17, 2021, were Tokens that Williams claimed belonged to his children and wife, and thus were not technically his Tokens. However, Williams kept the proceeds from the sale of these ICP Tokens for himself.

**Defendants Block Non-Insiders From Selling Their ICP Tokens**

74.     During the six-week time period from May 10, 2021 to June 24, 2021, while Defendants DFINITY Stiftung, Dominic Williams and Gian Bochsler were liquidating millions of ICP Tokens they owned or controlled, these Defendants employed various schemes to prevent non-insiders such as certain seed investors, employees, and ex-employees from selling ICP Tokens which they were entitled to sell.

75.     Defendants delayed delivery of ICP Tokens to DFINITY Stiftung employees until June 24 2021, by which time the value of ICP Tokens had fallen from a high of $750.73 per Token to approximately $34.59 per Token.

76.     Then, upon information and belief, DFINITY Stiftung told its employees that they could not sell their ICP Tokens for an additional two weeks because of a company imposed "blackout" period. The reason for this delay was to enable Defendants to liquidate Tokens at a high price before DFINITY Stiftung's employees sold their Tokens and drove the price down.

77.     Just before trading of ICP Tokens began, Defendants DFINITY, Dominic Williams, and Gian Bochsler imposed long-term vesting periods on the ICP Tokens of seed investors. On May 10, 2021, DFINITY Stiftung announced that seed investors would be subject to a four-year vesting period and could only access 2% of their ICP Tokens in May 2021. The reason for this delay was to enable Defendants to liquidate ICP Tokens at a high price before DFINITY Stiftung's seed investors sold their Tokens and drove the price down.

78.     Defendant DFINITY imposed last minute know your client requirements on seed investors already known to the Foundation to delay giving seed investors access to their ICP Tokens. The reason for this delay was to enable Defendants to liquidate ICP Tokens at a high price before DFINITY Stiftung's seed investors sold their Tokens and drove the price down.

79.     Defendant DFINITY imposed technical barriers to prevent or delay seed investors from accessing their ICP Tokens, including requiring investors to purchase special computers, install complicated software, utilize pass phrases which Defendant purposely made unusable, and prevented a third of the seed investors from accessing and saving their seed phrases, a 12-word password needed to access their ICP Tokens.

80.     The reason Defendants imposed these onerous requirements and procedures was to enable Defendants to liquidate their own ICP Tokens at a high price before DFINITY Stiftung's seed investors sold their Tokens and drove the price down.

81.     Defendants DFINITY Stiftung, Dominic Williams, and Gian Bochsler prevented some seed investors from receiving access to any of their ICP Tokens. For example Satoshi Kobayashi, who was entitled to receive 5,188,487 ICP Tokens at the launch of the network, did not receive any Tokens at all. The reason Defendants refused to transfer the 5,188,487 ICP Tokens due to Satoshi Kobayashi was to enable Defendants to liquidate their own Tokens at a high price before Satoshi Kobayashi sold his Tokens and drove the price down.

82.     Defendants DFINITY Stiftung, Dominic Williams, and Gian Bochsler prevented Plaintiff Eftychios Theodorakis from receiving 12,608 ICP Tokens which he was entitled to receive by May 28, 2023, by insisting that Plaintiff sign documents relinquishing rights to which Plaintiff was entitled. The reason Defendants refused, and continue to refuse, to transfer these 12,608 ICP Tokens to Plaintiff, was to enable Defendants to liquidate their own ICP Tokens at a high price before Plaintiff sold these Tokens and drove the price down.

**Defendants' Fraudulent Scheme Gains Billions, While Investors and Plaintiff Lose Billions**

83.     Defendants' false statement about their inability to sell ICP Tokens at the time of the cryptocurrency's launch, allowed Defendants to sell millions of ICP Tokens at a high price to the unwitting public, before many seed investors, employees and ex-employees entitled to ICP Tokens had a chance to sell their Tokens.

84.     Defendants' false statements that they did not control the Internet Computer network, and that the network was decentralized and autonomous, and that DFINITY Stiftung was a not-for-profit organization, gave the cryptocurrency buying public a false sense of confidence in the value of ICP Tokens, luring buyers into paying a high price for ICP Tokens that quickly lost value.

85.     Defendants also raised millions of dollars by convincing individuals and businesses to run their software on the Internet Computer network, based on Defendants' false statements that control of the Internet Computer network is decentralized.

86.     Defendants' pattern of deceptive statements was a fraudulent scheme that enabled DFINITY Stiftung, Dominic Williams, and Gian Bochsler to profit from the early sale of ICP Tokens owned and controlled by Defendants, while simultaneously damaging the value of ICP Tokens belonging to seed investors, employees, ex-employees, and the unwitting buyers who bought ICP Tokens from Defendants in May and June 2021.

87.     Throughout the latter half of 2021, and in 2022 and 2023, Defendants continued to make false statements that they did not have the ability to sell their ICP Tokens after the network launch, that the Internet Computer was not controlled by Defendants, and that DFINITY Stiftung was a not-for-profit organization.

88.     As a result of Defendants' conduct, the value ICP Token plummeted from a high of $750.73 on May 10, 2021, down to $30.39 on June 26, 2021. As a further result of Defendants' ongoing false statements throughout the latter half of 2021, and in 2022 and 2023, the value of ICP Tokens has continued to fall, so that now each ICP Token is worth about $3.36.

**Defendants Transfer Proceeds From Their Fraudulent Schemes Via Wire Transfer**

89.     On May 10, 2021, or shortly thereafter, while claiming that his Tokens were locked, Defendant Dominic Williams sold a large number of ICP Tokens that Williams claimed he was holding in trust for his sons, as well as Tokens that belonged to his wife pursuant to a marriage separation agreement.

90.     Defendant Williams made millions of dollars from these sales which he transferred from his accounts at Coinbase and other cryptocurrency exchanges to financial accounts at First Republic Bank in California, and eventually, on information and belief to financial account or accounts in Switzerland or other European countries.

91.     Likewise on information and belief, Defendants DFINITY Stiftung and Gian Bochsler transferred the proceeds of their fraudulent sales of ICP Tokens from Defendants' accounts at Coinbase and other cryptocurrency exchanges to accounts at financial institutions in the United States and to accounts at in European countries, including Switzerland.

**Defendants Convert Tokens Withheld from Seed Investors, Plaintiff and Others**

92.     Satoshi Kobayashi, an early Seed Investor in DFINITY Stiftung, was entitled to possess millions of ICP Tokens upon launch of the cryptocurrency on May 10, 2021. However Defendants DFINITY Stiftung, Domnic Williams and Gian Bochsler took Mr. Kobayashi's ICP Tokens, and on information and belief, transferred Mr. Kobayashi's ICP Tokens to Internet Computer accounts or network nodes located in foreign countries, and/or different states in the United States. Defendants have retained these ICP Tokens and refused to deliver them to Mr. Kobayashi.

93.     Plaintiff Theodorakis Eftychios was entitled to possess an additional 12,608 ICP Tokens in May 2021. However Defendants DFINITY Stiftung, Domnic Williams and Gian Bochsler took Plaintiff's ICP Tokens, and on information and belief, transferred Plaintiff's ICP

Tokens to Internet Computer accounts or network nodes located in foreign countries, and/or different states in the United States. Defendants have retained these ICP Tokens and refused to deliver them to Plaintiff.

94.     Shortly after ICP Tokens began trading on cryptocurrency exchanges like Coinbase on May 10, 2021, Defendant Dominic Williams sold thousands or millions of ICP Tokens belonging to his son Sacha Williams. Williams then deposited the proceeds from the sale of Sacha's ICP Tokens into a bank account controlled by Dominic Williams in a foreign country or another state. Dominic Williams has withheld the proceeds of the sale of Sacha Williams' ICP Tokens from Sacha Williams.

**Defendants Williams and Bochsler Use the Proceeds of Their Fraudulent Scheme to Consolidate Control Over DFINITY Stiftung and the Internet Computer Association.**

95.     Defendants Dominic Williams and Gian Bochsler used proceeds of their fraudulent scheme to sell ICP Tokens to invest in, acquire, operate and control a number of enterprises affecting interstate or international commerce, including DFINITY Stiftung, the Internet Computer Association, DFINITY USA Research LLC, DFINITY Operations S.A., and the ORIGYN Foundation.

96.     DFINITY Stiftung, the Internet Computer Association, DFINITY USA Research LLC, DFINITY Operations S.A., and the ORIGYN Foundation are all enterprises that affect interstate or international commerce because they all engage in the buying and selling of ICP Tokens, which are traded on by investors throughout the United States and the world.

**Defendants' Conduct Harmed The Value of Plaintiff's ICP Tokens**

97.     On May 10, 2021, Plaintiff EFTYCHIOS THEODORAKIS received 41,666 ICP Tokens from Plaintiff's former employer, DFINITY USA Research, LLC. Plaintiff has a right to 12,608 additional ICP Tokens, which Defendant DFINITY Stiftung has refused to give him.

98.     On May 10, 2021, and for the next six weeks, Defendants sold millions ICP Tokens, knowing that selling such a large number in such a short time would hurt the value of Plaintiff's ICP Tokens.

99.     As a result of Defendants' misrepresentations regarding their control of the

Internet Computer network and inability to sell ICP Tokens at network launch, as well as the alleged not-for-profit status of the DFINITY, Plaintiff was lulled into confidence in the value and stability of ICP Tokens, and refrained from selling all of the ICP Tokens he could have sold on May 10, 2021. Plaintiff relied on Defendants' lies and retained most of his ICP Tokens to Plaintiff's detriment.

100.    As a result of the acts, conduct or omissions of Defendants, the value of Plaintiffs ICP Tokens has been damaged in an amount of at least $33,000,000.

## CLAIMS FOR RELIEF

## COUNT I

### Conversion

### (Against All Defendants)

101.    Plaintiff incorporates the allegations of Paragraphs 1 to 100 into the allegations of this cause of action.

102.    Defendants wrongfully exercised control over Plaintiff's personal property, that is, his ICP Tokens.

103.    Plaintiff owned 41,666 ICP Tokens, and has a right to possess an additional 12,608 ICP Tokens.

104.    Defendants substantially interfered with Plaintiff's property by knowingly or intentionally destroying the value of Plaintiff's ICP Tokens, and preventing Plaintiff from having access to ICP Tokens..

105.    Plaintiff did not consent to Defendants' actions.

106.    Plaintiff was harmed by Defendants' actions.

107.    Defendants' conduct was a substantial factor in causing Plaintiff's harm.

108.    Defendants DFINITY Stiftung, Dominic Williams and Gian Bochsler acted with malice, oppression, or fraud, made they made false statements about their inability to control the Internet Computer network and their inability to sell ICP tokens at network launch, then dumped millions of ICP Tokens on the cryptocurrency market, knowing that their actions would harm the value of the ICP Tokens belonging to Plaintiff.

## COUNT II

### Trespass To Chattels

### (Against All Defendants)

109.    Plaintiff incorporates the allegations of Paragraphs 1 to 100 into the allegations of this cause of action.

110.    Defendant wrongfully trespassed on Plaintiff's personal property, that is, his ICP Tokens.

111.    Plaintiff owned 41,666 ICP Tokens, and had a right to possess an additional 12,608 ICP Tokens.

112.    Defendant intentionally interfered with Plaintiff's use or possession of Plaintiff's ICP Tokens, and intentionally damaged the value of Plaintiff's ICP Tokens

113.    Plaintiff did not consent to Defendants' actions.

114.    Plaintiff was harmed by Defendants' actions.

115.    Defendants' conduct was a substantial factor in causing Plaintiff's harm.

116.    Defendants DFINITY Stiftung, Dominic Williams and Gian Bochsler acted with malice, oppression, or fraud, made they made false statements about their inability to control the Internet Computer network and their inability to sell ICP tokens at network launch, then dumped millions of ICP Tokens on the cryptocurrency market, knowing that their actions would harm the value of the ICP Tokens belonging to Plaintiff.

## COUNT III

### Negligence – Cal Civ Code § 1714

### (Against All Defendants)

117.    Plaintiff incorporates the allegations of Paragraphs 1 to 100 into the allegations of this cause of action.

118.    Cal Civ Code § 1714 provides that everyone is responsible for an injury occasioned to another by his or her want of ordinary care or skill in the management of his property or person.

119.    As owner, developer, and issuer of ICP Tokens, Defendant DFINITY Stiftung,

First Amended Complaint

and its officers Defendants Dominic Williams and Gian Bochsler, had a duty to sell and distribute ICP Tokens in a manner that used reasonable care to avoid injury to Plaintiff and other holders of ICP Tokens.

120.     Upon information and belief, Defendants breached their duty to Plaintiff when Defendants, other DFINITY Insiders, sold millions of ICP Tokens within six weeks after May 10, 2021.

121.     In addition, Defendants breached their duty to Plaintiff when it failed to provide DFINITY Stiftung's employees with cash in lieu of tokens when Defendant's employees received their ICP tokens, forcing the employees to immediately liquidate a large percentage of their tokens in order to pay income taxes.

122.     This dumping of ICP Tokens and failure to provide DFINITY Stiftung's employees with cash in lieu of tokens, caused the value of ICP Tokens to plummet from a high of $721 on May 10, 2021 to $30.39 on June 26, 2021. The current value of ICP Tokens is less approximately $3.36.

123.     Defendants' breach of their duty was a substantial factor in causing Plaintiff's injury.

## COUNT IV

### Civil Penalties Under Cal. Penal Code § 496(c)

### (Against All Defendants)

124.     Plaintiff incorporates the allegations of Paragraphs 1 to 100 into the allegations of this cause of action.

125.     Cal. Penal Code § 496(a) provides that a person who withholds, or aids in withholding any property from the owner, knowing the property to be so stolen or obtained, is guilty of a felony if the property is worth more than $950.

126.     As described above Defendant DFINITY Stiftung converted 12,608 of Plaintiff's ICP Tokens to its own use.

127.     Defendants DFINITY Stiftung, Dominic Williams and Gian Bochsler withheld this property from Plaintiff knowing the ICP Tokens were stolen from Plaintiff.

128.     Plaintiff sustained damage as a result of Defendants withholding his Tokens, in an amount to be proved at trial.

129.     Pursuant to Pen. Code, § 496(c) Plaintiff is entitled to three times actual damages, sustained by the Plaintiff, costs of suit, and reasonable attorney's fees.

**COUNT V**

**Unfair Competition – Bus. & Prof. Code § 17200**

**(Against All Defendants)**

130.     Plaintiff incorporates the allegations of Paragraphs 1 to 100 into the allegations of this cause of action.

131.     Cal. Business and Professions Code § 17200 prohibits any unlawful, unfair, or fraudulent business act or practice.

132.     As described above, Defendants DFINITY Stiftung, Dominic Williams and Gian Bochsler made false statements regarding their ability to sell ICP Tokens upon the launch of the cryptocurrency, their inability to control the Internet Computer network, and the not-for-profit status of DFINITY Stiftung.

133.     Defendants DFINITY Stiftung, Dominic Williams, and Gian Bochsler sold millions of ICP Tokens within five weeks of May 10, 2021, while preventing and influencing Plaintiff from selling his Tokens.

134.     Defendants than transferred the proceeds of their fraudulent scheme to sell ICP Tokens from their Coinbase account in San Francisco to bank accounts in other states and other countries.

135.     Defendants' conduct was an unlawful, unfair, or fraudulent business act or practice.

136.     Defendants' conduct has deprived Plaintiff of ICP Tokens and caused the value of Plaintiff's ICP Tokens to plummet from a high of $731 on May 10, 2021 to $30.39 on June 26, 2021. The current value of ICP Tokens is approximately $3.36.

137.     As a result of the acts, conduct or omissions of Defendants, Defendant DFINITY Stiftung, Dominic Williams and Gian Bochsler have appropriated at least $33,000,000 from

1   Plaintiff.

2   138.   Plaintiff is entitled to restitution of any money or property Defendants

3   appropriated from Plaintiff through its unlawful, unfair, or fraudulent business act or practices.

4   139.   Plaintiff is entitled to a disgorgement of any interest or profits Defendants made

5   as a result of Defendants' expropriation of money or property from Plaintiff.

6   <u>**COUNT VI**</u>

7   **Intentional Misrepresentation**

8   **(Against All Defendants)**

9   140.   Plaintiff incorporates the allegations of Paragraphs 1 to 100 into the allegations of

10   this cause of action.

11   141.   Prior to the public launch of ICP Tokens on May 10, 2021, as detailed above,

12   Defendants DFINITY Stiftung and Williams made false statements or misleading statements to

13   the public about their control of the Internet Computer network and their ability to sell ICP

14   Tokens they owned or controlled, and the not-for-profit status of DFINITY Stiftung.

15   142.   Defendants knew these representations were false when he made them.

16   143.   Defendants intended to Plaintiff and other ICP token holders to rely on their false

17   statements by believing in the stability of the ICP token market.

18   144.   Plaintiff reasonably relied on Defendants' false statements by holding onto his

19   ICP tokens, instead of selling them as soon as possible.

20   145.   Plaintiff was harmed by Defendants' false statements because he did not sell all of

21   his ICP tokens as soon as possible.

22   146.   Plaintiff's reliance on Defendants' false statements was a substantial factor in

23   causing Plaintiff's harm, because if Plaintiff had known that Defendants could sell a far larger

24   percentage of Tokens than claimed, and had known that Defendants controlled the Internet

25   Computer network NNS which distributed ICP tokens, then Plaintiff would have sold his tokens

26   as soon as possible.

27   147.   Defendants DFINITY Stiftung and Dominic Williams acted with malice,

28   oppression, or fraud, made they made false statements about their inability to control the Internet

Computer network and their inability to sell ICP tokens at network launch, then dumped millions of ICP Tokens on the cryptocurrency market, knowing that their actions would harm the value of the ICP Tokens belonging to Plaintiff.

## COUNT VII

**Racketeer Influenced & Corrupt Organization Act – 18 U.S. Code § 1962(a)**

**(Against Defendants Dominic Williams and Gian Bochsler)**

148.    Plaintiff incorporates the allegations of Paragraphs 1 to 100 into the allegations of this cause of action.

149.    Defendants DFINITY Stiftung, Dominic Williams, and Gian Bochsler committed the following predicate crimes which are racketeering activities common to all Plaintiff's Racketeer Influenced & Corrupt Organization Act (RICO) claims:

Wire Fraud (18 U.S. Code § 1343)

150.    As described in detail above, Defendants DFINITY Stiftung, Dominic Williams, and Gian Bochsler engaged in a pattern of racketeering activity in violation of 18 U.S. Code § 1343, by transmitting false statements over the internet for the purpose of executing a scheme to defraud owners and buyers of ICP Tokens, in order to obtain money by selling ICP Tokens themselves.

151.    Defendants knowingly participated in and devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.

152.    The statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property.

153.    Defendants acted with the intent to defraud, that is, the intent to deceive and cheat.

154.    Defendant used, or caused to be used, an interstate or foreign wire communication to carry out an essential part of the scheme.

Financial Transaction to Promote Unlawful Activity (18 U.S.C. § 1956(a)(1)(A)):

155.    18 U.S. Code § 1956(a)(1)(A) makes it unlawful to knowingly conduct a financial transaction which involves the proceeds of a specified unlawful activity with the intent to promote the carrying on of the specified unlawful activity.

156.    Defendants DFINITY Stiftung, Dominic Williams and Gian Bochsler conducted a financial transaction involving the proceeds of Defendants' fraudulent scheme to sell ICP Tokens in violation of 18 U.S. Code § 1343.

157.    Defendants knew that the money represented the proceeds of some form of unlawful activity.

158.    Defendants acted with the intent to promote the carrying on of Defendants' fraudulent scheme to sell ICP Tokens in violation of 18 U.S. Code § 1343.

159.    Defendants did something that was a substantial step toward committing the crime, by transferring the proceeds of the sale of ICP Tokens to accounts owned or controlled by Defendants.

Laundering Monetary Instruments (18 U.S.C. § 1956(a)(1)(B))

160.    18 U.S. Code § 1956(a)(1)(B) makes it unlawful to conduct a financial transaction, knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of a specified unlawful activity, or to avoid a transaction reporting requirement under State or Federal law.

161.    Defendants DFINITY Stiftung, Dominic Williams and Gian Bochsler conducted a financial transaction involving property that represented the proceeds of Defendants' fraudulent scheme to sell ICP Tokens in violation of 18 U.S. Code § 1343.

162.    Defendant knew that the property represented the proceeds of their fraudulent scheme to sell ICP Tokens in violation of 18 U.S. Code § 1343.

163.    Defendants knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds.

164.    Defendant did something that was a substantial step toward committing the crime.

Transporting Funds to Promote Unlawful Activity (18 U.S.C. § 1956(a)(2)(A))

165.    18 U.S. Code § 1956(a)(2)(A) makes it unlawful to transfer funds from a place in the United States to a place outside the United States with the intent to promote the carrying on of specified unlawful activity.

166.    Defendants DFINITY Stiftung, Dominic Williams and Gian Bochsler transported money from a place in the United States to a place outside the United States.

167.    Defendants acted with the intent to promote the carrying on of fraudulent scheme to sell ICP Tokens in violation of 18 U.S. Code § 1343.

168.    Defendant did something that was a substantial step toward committing the crime.

Transporting Monetary Instruments (18 U.S.C. § 1956(a)(2)(B))

169.    18 U.S. Code § 1956(a)(2)(B) makes it unlawful to transfers funds from a place in the United States to a place outside the United States knowing that the funds involved in the transfer represent the proceeds of some form of unlawful activity and knowing that such transfer is designed to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity or to avoid a transaction reporting requirement under state or federal law.

170.    Defendants DFINITY Stiftung, Dominic Williams and Gian Bochsler transferred money from their accounts at Coinbase and other cryptocurrency exchanges in the United States to places outside the United States, including Switzerland.

171.    Defendants knew that the money represents the proceeds of their unlawful fraudulent wire transfers in violation of 18. U.S.C. § 1343 as described above.

172.    Defendant knew the transfer of money was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of their unlawful fraudulent wire transfers in violation of 18. U.S.C. § 1343, or to avoid a transaction reporting requirement under state or federal law.

173.    Defendants took a substantial step toward committing the crime by carrying out their fraudulent scheme to sell millions of their ICP Tokens while misrepresenting their ability to sell ICP Tokens, their supposed lack of control over the Internet Computer network, the not-for-

profit status of DFINITY Stiftung, and the technology behind the Internet Computer protocol.

Money Laundering (18 U.S.C. § 1957)

174.    18 U.S. Code § 1957 makes it unlawful to knowingly engage in a monetary transaction in criminally derived property of a value greater than $10,000 that is derived from specified unlawful activity takes place in the United States.

175.    Defendants Dominic Willaims and Gian Bochsler knowingly engaged in a monetary transaction of the money derived from their fraudulent scheme to sell ICP Tokens in violation of 18 U.S. Code § 1343.

176.    Defendants knew the transaction involved criminally derived property.

177.    The property had a value greater than $10,000;

178.    The property was, in fact, derived from a pattern of fraudulent wire transactions in violation of 18 U.S.C. 1343, as described above.

179.    The fraudulent wire transaction occurred in the United States because they were published on the social media platform formerly known as Twitter and other internet patterns that reached United States, and Defendants sold their ICP Tokens through Coinbase and other cryptocurrency exchanges located in the United States, and then transferred the proceeds from Coinbase and other cryptocurrency exchanges to financial accounts controlled by Defendants.

Violation of 18 U.S. Code § 1962(a)

180.    18 U.S. Code § 1962(a) makes it unlawful for any person who has received any income derived from a pattern of racketeering activity in which such person has participated as a principal, to use such income to invest that income in an enterprise which is engaged in interstate or foreign commerce.

181.    As described in detail above, Defendants Dominic Williams and Gian Bochsler engaged in a pattern of racketeering activity in violation of 18 U.S. Code § 1343, by transmitting false statements over the internet for the purpose of executing a scheme to defraud holders of ICP Tokens, and obtain money by selling ICP Tokens the owned or controlled, shortly after the cryptocurrency launch, and then transferred the proceeds of their fraudulent scheme in violation of 18 U.S. Code §§ 1956 and 1957.

182.     Defendants Dominic Williams and Gian Bochsler received income from their pattern of racketeering activity

183.     Defendants Williams and Bochsler used or invested part of that income or the proceeds of such income to buy an interest, invest in or operate DFINITY Stiftung, the Internet Computer Association, DFINITY USA Research LLC, DFINITY Operations S.A., and the ORIGYN Foundation.

184.     DFINITY Stiftung, the Internet Computer Association, DFINITY USA Research LLC, DFINITY Operations S.A., and the ORIGYN Foundation were engaged in, or its activities affected commerce between the United States and foreign countries, including Switzerland.

185.     18 U.S. Code § 1964(c) provides that any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

186.     Plaintiff was damaged by Defendants Dominic Williams and Gian Bochsler illegal wire fraud and money laundering activities, and investing the profits in DFINITY Stiftung, the Internet Computer Association and related enterprises named above, because Defendants' actions caused, and continues to cause, the value of the Plaintiff's ICP Tokens to decrease, resulting in Plaintiff suffering damages in excess of $33,000,000.

## COUNT VIII

**Racketeer Influenced & Corrupt Organization Act – 18 U.S. Code § 1962(b)**

**(Against Defendants Dominic Williams and Gian Bochsler)**

187.     Plaintiff incorporates the allegations of Paragraphs 1 to 100 into the allegations of this cause of action.

188.     18 U.S. Code § 1962(b) makes it unlawful for any person to acquire or maintain, any interest in or control of an enterprise which is engaged in interstate or foreign commerce through a pattern of racketeering activity.

189.     As described in detail above, Defendants Dominic Williams and Gian Bochsler engaged in a pattern of racketeering activity in violation of 18 U.S. Code § 1343, by transmitting

false statements over the internet for the purpose of executing a scheme to defraud holders of ICP Tokens, and obtain money by selling ICP Tokens the owned or controlled, shortly after the cryptocurrency launch, and then transferred the proceeds of their fraudulent scheme in violation of 18 U.S. Code §§ 1956 and 1957.

190.    Defendants Dominic Williams and Gian Bochsler used the proceeds of their racketeering activity to acquire or maintain an interest in or control of DFINITY Stiftung, the Internet Computer Association, DFINITY USA Research LLC, DFINITY Operations S.A., and the ORIGYN Foundation.

191.    Defendants did so through a pattern of racketeering activity as described above.

192.    DFINITY Stiftung, the Internet Computer Association, DFINITY USA Research LLC, DFINITY Operations S.A., and the ORIGYN Foundation engaged in or its activities in some way affected commerce between the United States and several foreign country, including Switzerland.

193.    For example, Defendants Dominic Williams and Gian Bochsler used Dominic Williams' pattern of racketeering activity to maintain control of DFINITY Stiftung, by controlling access to who would be able to receive and sell ICP Tokens, and controlling access as to whom would be able to vote on Internet Computer network governance issues.

194.    18 U.S. Code § 1964(c) provides that any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

195.    Plaintiff was damaged by Defendants Dominic Williams and Gian Bochsler using the proceeds from Defendants' illegal wire fraud and money laundering activities to control DFINITY Stiftung, the Internet Computer Association and related enterprises named above, because Defendants' control of these enterprises caused, and continues to cause, the value of the Plaintiff's ICP Tokens to decrease, resulting in Plaintiff suffering damages in excess of $33,000,000.

**COUNT IX**

**Racketeer Influenced & Corrupt Organization Act – 18 U.S. Code § 1962(c)**

**(Against Defendants Dominic Williams and Gian Bochsler)**

196.   Plaintiff incorporates the allegations of Paragraphs 1 to 100 into the allegations of this cause of action.

197.   18 U.S. Code § 1962(c) makes it shall be unlawful for any person employed or associated with an enterprise engaged in interstate or foreign commerce, to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity.

198.   As described in detail above, Defendants Dominic Williams and Gian Bochsler engaged in a pattern of racketeering activity in violation of 18 U.S. Code § 1343, by transmitting false statements over the internet for the purpose of executing a scheme to defraud holders of ICP Tokens, and obtain money by selling ICP Tokens the owned or controlled, shortly after the cryptocurrency launch, and then transferred the proceeds of their fraudulent scheme in violation of 18 U.S. Code §§ 1956 and 1957.

199.   Defendants Dominic Williams and Gian Bochsler were employed by or associated with DFINITY Stiftung, the Internet Computer Association, DFINITY USA Research LLC, DFINITY Operations S.A., and the ORIGYN Foundation.

200.   Defendants Dominic Williams and Gian Bochsler conducted the affairs of DFINITY Stiftung, the Internet Computer Association, DFINITY USA Research LLC, DFINITY Operations S.A., and the ORIGYN Foundation through the described pattern of racketeering activity.

201.   DFINITY Stiftung, the Internet Computer Association, DFINITY USA Research LLC, DFINITY Operations S.A., and the ORIGYN Foundation engaged in, or its activities affected commerce between the United States and several foreign countries, including Switzerland.

202.   Defendants Dominic Williams and Gian Bochsler used their pattern of racketeering activity to conduct the affairs of DFINITY Stiftung, by controlling access to who would be able to sell ICP Tokens and controlling access as to who would be able to vote on

1    Internet Computer network governance issues.

2        203.    18 U.S. Code § 1964(c) provides that any person injured in his business or

3    property by reason of a violation of section 1962 of this chapter may sue therefor in any

4    appropriate United States district court and shall recover threefold the damages he sustains and

5    the cost of the suit, including a reasonable attorney's fee.

6        204.    Plaintiff was damaged by Defendants Dominic Williams and Gian Bochsler's

7    illegal wire fraud and money laundering activities, because Defendants' actions caused, and

8    continues to cause, the value of the Plaintiff's ICP Tokens to decrease, resulting in Plaintiff

9    suffering damages in excess of $33,000,000.

10                                    **<u>COUNT X</u>**

11        **Racketeer Influenced & Corrupt Organization Act – 18 U.S. Code § 1962(d)**

12              **(Against Defendants Dominic Williams and Gian Bochsler)**

13        205.    Plaintiff incorporates the allegations of Paragraphs 1 to 100 into the allegations of

14    this cause of action.

15        206.    18 U.S. Code § 1962(d) makes unlawful for any person to conspire to violate any

16    of the provisions of subsection (a), (b), or (c).

17        207.    As described in detail above, Defendants Dominic Williams and Gian Bochsler

18    engaged in a pattern of racketeering activity in violation of 18 U.S. Code § 1343, by transmitting

19    false statements over the internet for the purpose of executing a scheme to defraud holders of

20    ICP Tokens, and obtain money by selling ICP Tokens they owned or controlled, shortly after the

21    cryptocurrency launch, and then transferred the proceeds of their fraudulent scheme in violation

22    of 17 U.S. Code §§ 1956 and 1957.

23        208.    Upon information and belief, Defendants Dominic Williams and Gian Bochsler

24    agreed and conspired to engage in the described pattern of wire fraud and money laundering

25    activities, and agreed to invest the proceeds of their racketeering activity in DFINITY Stiftung,

26    the Internet Computer Association, and related enterprises, control these enterprises, and conduct

27    the affairs of these enterprises through a pattern of racketeering activity, and did in fact use

28    Williams' pattern of racketeering activity, to invest in, control, and conduct the affairs of

DFINITY Stiftung, the Internet Computer Association and related enterprises.

209.    18 U.S. Code § 1964(c) provides that any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

210.    Plaintiff was damaged by Defendants' agreement, and the overt acts Defendants Williams and Bochsler committed in furtherance of their wire fraud and money laundering activities, and using the proceeds to invest in, control, and conduct the affairs of DFINITY Stiftung, the Internet Computer Association, and related  enterprises, because Defendants' actions caused, and continues to cause, the value of the Plaintiff's ICP Tokens to decrease, resulting in Plaintiff suffering damages in excess of $33,000,000.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial pursuant to the Seventh Amendment to the United States Constitution.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff prays for judgment as follows:

(a) Compensatory damages according to proof, in an amount of at least $33,000,000;

(b) Disgorgement of interest and profit Defendants made as a result of their unfair competition;

(c) Appropriate injunctive relief to prevent Defendants from engaging in further unfair competition;

(d) Exemplary damages;

(e) Treble damages pursuant to Cal. Penal Code § 496(c);

(f) Treble damages pursuant to 18 U.S. Code § 1964(c) against Defendants Dominic Williams and Gian Bochsler;

(g) Attorneys' fees as permitted by statute, including Cal. Penal Code § 496(c) against all Defendants, and 18 U.S. Code § 1964(c) against Defendants Dominic Willaims and Gian Bochsler ;

First Amended Complaint

(h) Costs of suit;

(i)  Other relief as the Court may deem just and proper.


Dated: August 31, 2023                                            WADE LAW GROUP

                                                        By:    /s/Evan Livingstone
                                                               Evan Livingstone
                                                               Attorneys for Plaintiff
                                                               Eftychios Theodorakis

First Amended Complaint