UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EFTYCHIOS THEODORAKIS,<br><br>    Plaintiff,<br><br>v.<br><br>DFINITY STIFTUNG, et al.,<br><br>    Defendants. | Case No. 23-cv-02280-AMO<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 17, 18, 19 |

Before the Court is DFINITY STIFTUNG's motion to dismiss, Dominic Williams's motion to dismiss, and Gian Bochsler's motion to dismiss. The matters are fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for **May 1, 2024** is VACATED. *See* Civil L.R. 7-1(b). Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the Court hereby **GRANTS** the motions to dismiss for the following reasons.

**I.    BACKGROUND**

    **A.    Factual Background**

Defendant DFINITY STIFTUNG ("DFINITY" or the "Foundation") is a Swiss foundation that develops and promotes new technologies and sells a cryptocurrency it created, ICP Tokens. First Amended Complaint ("FAC" or "¶") (ECF 9) ¶ 1, 13.[1] Defendant Dominic Williams is the Founder and Chief Scientist of DFINITY, as well as member of its board. FAC ¶ 15. Defendant

---
[1] The Court accepts Plaintiff's allegations in the complaint as true and construes the pleadings in the light most favorable to Plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

Gian Bochsler is a "council or board member"[2] of DFINITY. ¶ 16. Williams is a British citizen domiciled in Switzerland. FAC ¶ 15; Williams Aff. (ECF 18-1) ¶ 1. Bochsler is a Swiss citizen domiciled in Switzerland. FAC ¶ 16; Bochsler Aff. (ECF 19-1) ¶¶ 2-3. The Summons and Complaint were delivered at the Foundation to an individual identified as Lia Bajraliu, an IT Systems Engineer. Bajraliu Aff. (ECF 21); ECF 33; ECF 34. The Swiss Authority served the documents and certified that they were served in accordance with Article 5 of the Hague Convention. ECF 33, 34.

DFINITY describes the technology it creates, the Internet Computer network, as an "intelligent decentralized cloud" that is a "mainframe computer in cyberspace." ¶ 21. Defendants publicly launched their ICP Tokens on May 10, 2021. ¶ 26. Leading up to the launch, and continuing through the present, Defendants made false statements that ICP Tokens were a safe and stable investment, including generally that (1) Defendants could not and did not sell their ICP Tokens in May 2021; (2) The Internet Computer is autonomous and not controlled by Defendants; and (3) DFINITY is a not-for-profit organization. ¶¶ 26-27.

Around May 10, 2021, Williams falsely stated that ICP Tokens owned or controlled by Defendants were "locked up at launch for a week," when in actuality Defendants transferred 3.1 million ICP Tokens to accounts Defendants controlled at Coinbase and other cryptocurrency exchanges. ¶¶ 49-50, 55-56, 70-71. Williams made millions of dollars from transferring his accounts at Coinbase and other cryptocurrency exchanges to financial accounts at First Republic Bank in California and to financial accounts in Switzerland or other European countries. ¶ 90. DFINITY and Bochsler also transferred the proceeds of sales of their ICP Tokens from accounts at Coinbase and other cryptocurrency exchanges at United States financial institutions to European accounts. ¶ 91. During the six-week period from May 10 to June 24, 2021, while Defendants liquidated millions of ICP Tokens, Defendants prevented non-insiders from selling ICP Tokens they were entitled to sell. ¶ 74. Defendants delayed delivery of ICP Tokens to DFINITY

---

[2] Plaintiff does not allege how, or if, this position differs from Williams's board position. Accordingly, the Court has no reason to treat these positions differently.

2

1 employees until June 24, 2021, during which time the value of ICP Tokens fell from $750.73 per

2 Token to approximately $34.59 per Token. ¶ 75. The Foundation then imposed an additional

3 two-week "blackout" period and long-term vesting period. ¶¶ 76-77.

4 On May 10, 2021, Plaintiff Eftychios Theodorakis received 41,666 ICP Tokens from his

5 former employer DFINITY USA Research, LLC. ¶ 97. Plaintiff "has a right to 12,608 additional

6 ICP Tokens, which Defendant DFINITY Stiftung has refused to give him." ¶ 97. Over the

7 following six weeks, Defendants sold millions of ICP Tokens, knowing that selling the tokens

8 would hurt the value of Plaintiff's ICP Tokens. ¶ 98. Because of Defendants' misrepresentations,

9 Plaintiff "was lulled into confidence in the value and stability of ICP Tokens, and refrained from

10 selling all of the ICP Tokens he could have sold on May 10, 2021." ¶ 99.

### B. Procedural Background

On May 10, 2023, Plaintiff filed his complaint in federal court, alleging conversion, trespass to chattels, negligence, civil penalties under California Penal Code Section 496, and unfair competition. ECF 1. On August 31, 2023, Plaintiff filed the FAC, bringing claims of conversion, trespass to chattels, negligence, civil penalties under California Penal Code Section 496(c), unfair competition, and intentional misrepresentation against all defendants, and four civil RICO violations, 18 U.SC. § 1962(a)-(d), against Williams and Bochsler (the "Individual Defendants"). ECF 9. Defendants DFINITY Stiftung, Williams, and Bochsler each filed a motion to dismiss on November 29, 2023 seeking to dismiss the complaint in its entirety. ECF 17, 18, 19. The Court first considers the Individual Defendants' motions to dismiss together before turning to DFINITY's motion to dismiss, as the sole bases for subject matter jurisdiction are the RICO claims against Williams and Bochsler.

## II. WILLIAMS AND BOSCHLER'S MOTIONS TO DISMISS

Williams and Bochsler both move to dismiss the complaint, arguing that Plaintiff failed to properly serve them under the Hague Convention, the court lacks personal jurisdiction over them, and that Plaintiff has failed to state a claim.[3] The Court analyzes each of these arguments in turn.

---

[3] The Court notes that Williams and Bochsler's motions were nearly identical. Counsel represents both parties, and the Court admonishes counsel for wasting the Court's time by writing duplicate

### A. Service

Claims cannot proceed against a defendant unless service is proper. *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Both parties agree that the individual defendants must be served pursuant to the Hague Convention, which provides that service shall be effectuated "by a method prescribed by [the destination state's] internal law for the service of documents . . . [.]" Hague Conv. Art. 5(a); *see* Fed. R. Civ. P. 4(f). However, Williams and Bochsler argue that service was improper under Swiss law. ECF 18 at 18; ECF 19 at 18. Plaintiff contends that the proof of service filed with the Court and stamped by the Swiss agency is prima facie evidence that the summons was served in conformity with the Hague Convention, and thus Rule 4. ECF 36 at 6-7; ECF 37 at 6-7. The Court agrees that the certificate here is prima facie evidence that service was made in compliance with Swiss law. *See Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1390 (8th Cir. 1995) (declining to look beyond the certificate of service to adjudicate issues of Spanish procedural law); *see, e.g.*, *Hubei Gezhouba Sanlian Indus. Co. v. Robinson Helicopter Co.*, No. 2:06-CV-01798-FMCSSX, 2009 WL 2190187, at *4 (C.D. Cal. July 22, 2009), *aff'd*, 425 F. App'x 580 (9th Cir. 2011) (reasonable to find compliance with the Hague Convention based on validity of completed certificate); *see also Res. Trade Fin., Inc. v. PMI Alloys, LLC*, No. 99 CIV. 5156 (DAB), 2002 WL 1836818, at *4 (S.D.N.Y. Aug. 12, 2002) (court did not "look beyond" the completed certificate of service issued by the Swiss Authority to examine whether service complied with the Hague Convention). Accordingly, the Court declines to look beyond the certificate stamped by the Swiss agency and finds that service is proper here.[4]

### B. Personal Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim for lack of personal jurisdiction. "[P]laintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir.

---

pleadings.

[4] The Court also notes that Defendants did not provide an English translation of the Swiss law which they request that the Court interpret.

4

2006); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (same). "The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach*, 453 F.3d at 1154. In determining whether the plaintiff has met its burden, courts must accept as true all uncontroverted allegations in the plaintiff's complaint and resolve all disputed facts in the plaintiff's favor. *Schwarzenegger*, 374 F.3d at 800 (citation omitted).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *see also Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (same). California's long-arm statute permits jurisdiction to the full extent the due process clause permits. *Williams*, 851 F.3d at 1020; *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006); Cal. Code. Civ. P. § 410.10. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800-01. In reviewing the "nature and extent of the defendant's relationship with the forum state," the Supreme Court recognizes two types of personal jurisdiction: general and specific jurisdiction. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citation omitted).

As the parties agree that general jurisdiction does not apply here, the Court focuses on the requirements of specific jurisdiction. *See* ECF 36 at 10-13. Specific jurisdiction depends on the relationship between "the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 277 (2014) (citation omitted). In the Ninth Circuit, courts use a three-prong test to analyze whether specific personal jurisdiction exists over a non-resident defendant. *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020). First, the defendant must "purposefully direct his activities" at the forum or "perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum." *Id.* (citation omitted). Next, the claim must "arise out of or relate to" those forum-related activities. *Id.* Finally, the exercise of jurisdiction must comport with fair play and substantial justice – in other words, it must be reasonable. *Id.* at 1109; *see Williams*, 851 F.3d at 1023

1 (citation omitted).  The plaintiff has the burden of satisfying the first two prongs of the "minimum

2 contacts" test.  *Pebble Beach*, 453 F.3d at 1154.  If the plaintiff satisfies the first two prongs, the

3 burden shifts to the defendant to "present a compelling case" that jurisdiction would not be

4 reasonable.  *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 476-78).

5         The Court first examines whether Plaintiff has satisfied the first two prongs of the

6 minimum contacts test.  As Plaintiff does not satisfy these prongs, the Court need not look further.

7         Under the first prong of the specific jurisdiction analysis, "the defendant must purposefully

8 direct its activities toward the forum state, purposefully avail itself of the privileges of conducting

9 activities there, or engage in 'some combination thereof.'"  *Impossible Foods Inc. v. Impossible X*

10 *LLC*, 80 F.4th 1079, 1088 (9th Cir. 2023) (citing *Yahoo!*, 433 F.3d at 1206).  Where, as here, the

11 underlying claim sounds in tort, courts focus on purposeful direction.  *Ayla, LLC v. Alya Skin Pty.*

12 *Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021).  The Court employs a three-part test to assess purposeful

13 direction, assessing whether Defendants "(1) committed an intentional act, (2) expressly aimed at

14 the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum

15 state."  *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017).

16         Here, Williams is a British citizen domiciled in Switzerland.  FAC ¶ 15; Williams Aff. ¶ 1.

17 Bochsler is a Swiss citizen domiciled in Switzerland.  FAC ¶ 16; Bochsler Aff. ¶¶ 2-3.  Plaintiff

18 alleges that "ICP Tokens owned or controlled by DFINITY Stiftung, Dominic Williams and Gian

19 Bochsler were transferred to cryptocurrency exchanges like Coinbase, and sold to buyers" in May

20 of 2021 and in the four weeks that followed.  FAC ¶¶ 50, 62.  Williams and Bochsler transferred

21 and sold millions of ICP Tokens they owned or controlled to Coinbase in the five-week period

22 starting May 10, 2021.  ¶¶ 71-72.  Williams made millions of dollars from sales which he

23 transferred from his accounts at Coinbase and other cryptocurrency exchanges to financial

24 accounts at First Republic Bank in California and accounts in Switzerland.  ¶ 90.  Bochsler

25 transferred proceeds of sale of ICP Tokens from accounts at Coinbase and other exchanges to

26 financial institutions in the U.S. and Europe.  ¶ 91.  Coinbase is a Delaware Corporation with a

principal address in California. Plaintiff RJN (ECF 38), Ex. A.[5] Plaintiff argues that because the Individual Defendants "purposefully availed [themselves] of Coinbase to make millions of dollars and caused damage to Plaintiff in California," there is specific jurisdiction. ECF 36 at 12-13; ECF 37 at 12-13. The Court cannot agree.

Under Plaintiff's rule, anyone in the world who uses Coinbase could be hailed into the Northern District of California. That is not what the case law dictates. In *Briskin v. Shopify*, the Ninth Circuit clarified that specific jurisdiction is a "claim-tailored inquiry" that requires the court to analyze whether the plaintiff's injury "arises out of or relates to" the defendant's forum-related activities. *Briskin v. Shopify, Inc.*, 87 F.4th 404, 413 (9th Cir. 2023) (citation omitted); *see, e.g.*, *Williams v. Sw. Energy Co.*, No. 23-CV-05884-VC, 2024 WL 1160305, at *1 (N.D. Cal. Mar. 18, 2024) (no personal jurisdiction over a company's whose only contact with California was sending payments to the forum state). Moreover, Plaintiff points to no authority showing that merely transferring cryptocurrency through a California bank or exchange constitutes expressly aiming conduct at California. Accordingly, this Court cannot find personal jurisdiction over Williams or Bochsler and grants the Individual Defendants' motions to dismiss. Although it seems unlikely that Plaintiff will be able to amend the complaint to allege sufficient facts to confer personal jurisdiction over Bochsler and Williams, the Court will grant such leave pursuant to the Ninth Circuit's direction. *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989); *see, e.g.*, *Athleta, Inc. v. Sports Grp. Denmark A/S*, No. 22-CV-03192-JST, 2023 WL 4110097, at *4 (N.D. Cal. June 20, 2023).

**III.     DFINITY'S MOTION TO DISMISS**

DFINITY brings a motion to dismiss for lack of subject matter jurisdiction, under the *Rooker-Feldman* doctrine, issue preclusion, and failure to state a claim. ECF 17. Plaintiff admits that there is no diversity jurisdiction because all parties are or were foreign nationals at the time of filing the lawsuit. ECF 35 at 20. Plaintiff does not bring any federal claims against DFINITY.

---

[5] Plaintiff requests that the Court take judicial notice of the statement of information for Coinbase Global. ECF 38. Because courts may take judicial notice of an undisputed matter of public record, the Court takes judicial notice of the statement of information. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

1  Plaintiff argues that because the Court has federal question jurisdiction over Williams and
2  Bochsler, the Court may exercise supplemental jurisdiction over Plaintiff's state law claims
3  against DFINITY.  *Id.*  Because the Court concludes that it lacks personal jurisdiction over
4  Williams or Bochsler, there are no remaining federal claims, and the Court cannot exercise
5  supplemental jurisdiction over DFINITY.  *See* 28 U.S.C. § 1367.  Accordingly, the Court grants
6  DFINITY's motion to dismiss.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Williams and Bochsler's motion to dismiss for lack of personal jurisdiction.  As there are no remaining federal claims or diversity jurisdiction, the Court cannot exercise supplemental jurisdiction over DFINITY and therefore **GRANTS** DFINITY's motion to dismiss.  Leave to amend is granted solely to add new jurisdictional allegations.  Any amended complaint shall be filed by **May 30, 2024**.  If Plaintiff can allege personal jurisdiction over Williams or Bochsler, Plaintiff may also include the claims against DFINITY brought under supplemental jurisdiction.

**IT IS SO ORDERED.**

Dated: April 30, 2024

A**RACELI** M**ARTÍNEZ**-O**LGUÍN**
**United States District Judge**

8