UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EFTYCHIOS THEODORAKIS,<br><br>Plaintiff,<br><br>v.<br><br>DFINITY STIFTUNG, et al.,<br><br>Defendants. | Case No. 23-cv-02280-AMO<br><br>**ORDER GRANTING MOTIONS TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 83, 84 |

Before the Court are the motions to dismiss of Gian Bochsler and Dominic Williams (ECF 83) and DFINITY Stiftung (ECF 84). The matters are fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for March 20, 2025 is **VACATED**. *See* Civ. L.R. 7-6. This Order assumes familiarity with the facts of the case, the parties' arguments, the relevant legal standards, as well as the Court's April 30, 2024 Order, ECF 71. Having reviewed the parties' papers and carefully considered the arguments therein, as well as the relevant legal authority, the Court hereby **GRANTS** the motions to dismiss for the following reasons.

I.  **BACKGROUND**

On August 31, 2023, Theodorakis filed the first amended complaint ("FAC"), bringing claims of conversion, trespass to chattels, negligence, civil penalties under California Penal Code Section 496(c), unfair competition, and intentional misrepresentation against all Defendants, and four civil Racketeer Influenced and Corrupt Organization ("RICO") Act violations, 18 U.S.C. 1962(a)-(d), against Bochsler and Williams (the "Individual Defendants"). ECF 9. On November 29, 2023, Defendants DFINITY Stiftung ("DFINITY"), Bochsler, and Williams each filed a motion to dismiss the complaint in its entirety. ECF 17, 18, 19. On April 30, 2024, the Court granted Bochsler's and Williams's motions to dismiss for lack of personal jurisdiction, and

1  granted DFINITY's motion as there were no remaining federal claims or diversity jurisdiction
2  permitting the Court to exercise supplemental jurisdiction over DFINITY. ECF 71. On May 30,
3  2024, Theodorakis filed the second amended complaint ("SAC"). ECF 74. The SAC again
4  alleges RICO claims, violations of Section 496(c) of the Penal Code, and trespass against the
5  Individual Defendants, and adds a new claim under Section 10(b) of the Securities Exchange Act
6  against all Defendants. *Id.* On July 19, 2024, Individual Defendants filed a motion to dismiss the
7  SAC (ECF 83), as did DFINITY (ECF 84). On November 22, 2024, Theodorakis filed a motion
8  for administrative relief seeking to submit supplemental evidence in support of his opposition to
9  Defendants' motion to dismiss. ECF 113. Defendants filed an opposition and motion to strike the
10 motion for administrative relief (ECF 114) and Theodorakis replied (ECF 117). The motion was
11 procedurally improper, as it was filed after the reply and contained substantive argument, *see* Civ.
12 L.R. 7-3(d), but in the interest of efficiency, the Court permitted Defendants to submit a surreply
13 (ECF 121), which they filed on January 2, 2025 (ECF 123).

## II. DISCUSSION

The Court first addresses the Individual Defendants' motion to dismiss before turning to DFINITY's motion, and, for the reasons set forth below, grants them both.[1]

### A. Individual Defendants' Motion to Dismiss

The Individual Defendants move to dismiss the SAC, arguing the Court lacks personal jurisdiction, the Court lacks subject matter jurisdiction over Theodorakis's claims under Rule 12(b)(1) and the *Rooker-Feldman* doctrine, and the SAC fails to state a claim under Rule 12(b)(6).[2]

---

[1] Defendants' requests for sanctions in the form of attorney's fees, *see* ECF 83 at 35; ECF 84 at 35, are not properly before the Court, and will only be considered if submitted in compliance with the Civil Local Rules.

[2] As the Court may "take judicial notice of undisputed matters of public record, including documents on file in federal or state courts," *see Rayn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006), as well as filings in arbitration proceedings, *see Rachford v. Air Line Pilots Ass'n, Int'l*, 284 F. App'x 473, 475 (9th Cir. 2008), it takes judicial notice of Defendants' Exhibits 18-23, *see* ECF 86, 96.

The Court first considers whether personal jurisdiction exists. In reviewing the "nature and extent of the defendant's relationship with the forum state," the Supreme Court recognizes two types of personal jurisdiction: general and specific jurisdiction. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citation omitted). "[P]laintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 452 F.3d 1151, 1154 (9th Cir. 2006); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

### 1. General Jurisdiction

The Court lacks general personal jurisdiction over the Individual Defendants. General jurisdiction exists where a defendant's activities are so "continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). An individual is domiciled in "her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

Despite alleging in his initial complaint and FAC that both Individual Defendants are "domiciled in Switzerland," Theodorakis now argues general jurisdiction exists. *See* ECF 105 at 8. However, Bochsler does not live or work in the United States, nor has he ever. Bochsler Affidavit (ECF 19-1) ¶¶ 9-10. Thus, the Court lacks general jurisdiction over him. Contrary to Theodorakis's assertion, ECF 113, the fact that Bochsler signed a contract on behalf of DFINITY does not contradict Bochsler's attestations that his sole involvement with DFINITY is serving as a mandatory Swiss-domiciled council member and does not impact his domicile.

The Court likewise lacks general jurisdiction over Williams. Theodorakis points to the fact that Williams, a British citizen, lived in California for nearly a decade before moving to Switzerland in June 2021 and owned a house, was married, raised children, and has been involved in litigation in California. *See* SAC ¶¶ 25, 29-31, 52, 62, 131. While these facts suggest California was once Williams's domicile, they do not, without more, show that it still is. Williams

3

1    had not lived in California for nearly two years at the time Theodorakis initiated this action.  *See*
2    SAC ¶ 25.  Theodorakis alleges that, prior to his move to Switzerland, Williams texted his then-
3    wife that "[t]he idea would be [to] both relocate . . . for a short time."  SAC ¶ 31.  But domicile is
4    evaluated in terms of "objective facts," and consequently "statements of intent are entitled to little
5    weight when in conflict with facts."  *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).  While
6    California may once have been Williams's domicile, Theodorakis has not alleged any facts
7    suggesting it remains so, i.e., that Williams intends to return to live here.  Indeed, the objective
8    facts suggest the opposite.  Williams holds a Swiss residency permit and owns residential property
9    in Zurich, Switzerland, where he lives with his wife and stepchildren.  Williams Affidavit (ECF
10   18-1) ¶¶ 3, 12, 13.  He has not owned property in the United States since 2017, and neither his ex-
11   wife nor his teenage son lives in California.  *Id.* ¶¶ 22-23.  Based on the facts before the Court,
12   Williams's domicile is Switzerland, and Theodorakis has not shown why Williams should be
13   subject to the general jurisdiction of this Court.  As it did in its April 30, 2024 Order, the Court
14   again concludes it lacks general jurisdiction over Individual Defendants.  ECF 71 at 5.

15           **2.   Specific Jurisdiction**

16           The Court now considers whether specific personal jurisdiction exists.  "The general rule is
17   that [specific] personal jurisdiction over a defendant is proper if it is permitted by a long-arm
18   statute and if the exercise of that jurisdiction does not violate federal due process."  *Pebble Beach*,
19   453 F.3d at 1154.  Specific jurisdiction depends on the relationship between "the defendant, the
20   forum, and the litigation."  *Walden v. Fiore*, 571 U.S. 277, 277 (2014) (citation omitted).  In the
21   Ninth Circuit, courts use a three-prong test to analyze whether specific personal jurisdiction exists
22   over a non-resident defendant.  *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz*
23   *Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020).  First, the defendant must "purposefully
24   direct his activities" at the forum or "perform some act by which he purposefully avails himself of
25   the privilege of conducting activities in the forum."  *Id.* (citation omitted).  Next, the claim must
26   "arise out of or relate to" those forum-related activities.  *Id.*  Finally, the exercise of jurisdiction
27   must comport with fair play and substantial justice – that is, it must be reasonable.  *Id.* at 1109; *see*
28   *Williams v. Yamaha Motor Co., Ltd.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (citation omitted).

The Court first examines whether Theodorakis has cured the deficiencies in the FAC and now satisfies the first two prongs, which he has the burden of satisfying. *Pebble Beach*, 453 F.3d at 1154. The Court finds Theodorakis has not met his burden.

The first prong of the specific jurisdiction analysis requires that "the defendant . . . purposefully direct[ed] its activities toward the forum state." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1088 (9th Cir. 2023); *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021). The Court employs a three-part test to assess purposeful direction, assessing whether Defendants "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017).

Theodorakis has not shown purposeful direction in the SAC. The Court previously found allegations regarding transferring cryptocurrency through a California bank or exchange insufficient to show purposeful direction, and such allegations revived in the SAC fare no better.[3] *See* ECF 71 at 6-7. The new allegations in the SAC still fall short. The thrust of Theodorakis's new allegations is that Williams focused fundraising efforts in California's Silicon Valley by giving an investor a tour of DFINITY's Palo Alto facility and raising millions of dollars from California-based investors. SAC ¶¶ 67-69. Theodorakis argues that seeking money from Silicon Valley investors and advertising their ties to Silicon Valley constitutes purposeful direction. ECF 105 at 12. However, it is not clear how Individual Defendants' actions, even if intentional acts expressly aimed at California, caused harm Individual Defendants knew was likely to be suffered there. Thus, Theodorakis has failed to satisfy the three-part test for purposeful direction.

Moreover, Theodorakis has not alleged that his claims arise out of Individual Defendants' activities in California. *See Glob. Commodities Trading Grp.*, 972 F.3d at 1107. "There must be 'an adequate link' between the defendant's contacts with the forum and the claims at issue," and absent "such connection, specific jurisdiction is lacking regardless of the extent of a defendant's

---

[3] In his administrative motion, Theodorakis argues that Bochsler's signature on an agreement with Coinbase "demonstrate[s] [his] connection to the acts necessary to offer the ICP token for sale in the United States," ECF 113 at 4, but the Court has already rejected the relevance of such arguments regarding Coinbase.

unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264 (2017). To determine whether the suit arises out of or relates to the defendant's contacts, courts in the Ninth Circuit follow the "but for" test – i.e., "but for" the defendant's contacts, plaintiff's claims would not have arisen. *Ziegler v. Indian River Cty.*, 64 F.3d 470 (9th Cir. 1995). Here, Theodorakis does not explain why, but for Williams's advertising and fundraising efforts related to California, his claims would not have arisen. Presumably, regardless of where the funders were based, Defendants could have launched the tokens and effectuated the alleged "blocking" of Theodorakis and others from possessing tokens. Moreover, Theodorakis's reliance on allegations regarding Williams's activities in California related to his family, property, or unrelated legal proceedings is misplaced, as they do not give rise to Theodorakis's claims here and thus are irrelevant for determining specific jurisdiction. Because Theodorakis has not met his burden of satisfying the first two prongs, he has failed to show that specific jurisdiction exists over the Individual Defendants.

The Court finally turns to Theodorakis's argument that DFINITY, DFINITY USA, and Individual Defendants have an alter ego relationship, such that the contacts of DFINITY and DFINITY USA can be imputed to Individual Defendants for purposes of establishing jurisdiction. "If a corporation is an alter ego of an individual or another corporation, then the district court may disregard the corporate form and exercise personal jurisdiction over the other individual or entity," *Heller v. Cepia*, No. C 11-01146 JSW, 2012 WL 13572, at *11 (N.D. Cal. Jan. 4, 2012), *aff'd in part*, 560 F. App'x 678 (9th Cir. 2014), despite the general rule that a corporation's forum contacts are not automatically imputed to each of the corporation's employees, *Glob. Commodities Trading Grp.,* 972 F.3d at 1109-1110. To establish an alter ego relationship, Theodorakis must plausibly allege "(1) that there is such unity of interest and ownership that the separate personalities no longer exist and (2) that failure to disregard [their separate entities] would result in fraud or injustice." *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001). The alter ego theory of liability "is an extreme remedy, sparingly used." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539 (2000).

The SAC states that "[t]here exists as a matter of law and fact a unity of interest between

Williams, Bochsler, DFINITY Stiftung, and DFinity USA" because DFINITY USA "is just a shell and a 'wholly owned subsidiary' " of DFINITY Stiftung, employees treated both entities as one company, employees at both companies were allowed to work together and share information and resources freely, and DFINITY USA had no revenue stream. SAC ¶¶ 53-55. However, "[t]otal ownership and shared management personnel are insufficient to establish the requisite level of control," *Ranza*, 793 F.3d at 1073, and Theodorakis's allegations are instead "typical of the parent-subsidiary relationship and, without more, are not suggestive of a unity of interest and ownership." *Corcoran v. CVS Health Corporation*, 169 F. Supp. 3d 970, 982-84 (N.D. Cal. 2016). Moreover, while the Court must start by taking allegations in a complaint as true, "mere allegations of the complaint, when contradicted by affidavits, are [not] enough to confer personal jurisdiction over a nonresident defendant." *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967). Here, Theodorakis's claims are largely unsupported, and lose their entitlement to the Court's deference upon Defendants' introduction of facts challenging the allegations. For example, Individual Defendants introduced evidence that in Switzerland, nonprofit foundations (called "stiftungs") are required to have an administrator on the council (equivalent to a board) who is a Swiss citizen living in Switzerland. Defendants introduce this to refute Theodorakis's argument that Bochsler had an operational or executive role at DFINITY, and to instead aver that Bochsler executed the agreements Theodorakis raises in his administrative motion, ECF 113, as DFINITY's legally required administrator. That Bochsler signed on behalf of DFINITY also fails to establish an alter ego relationship, and Theodorakis stating that it shows a "unity of interest between [DFINITY] and DFinity USA," *see* ECF 113, does not make it so.

Theodorakis's allegations are not only contradicted by Defendants' evidence, but his allegations lack precision. "To survive a motion to dismiss, a plaintiff asserting application of the alter ego doctrine must 'allege specifically both the elements of alter ego liability, as well as facts supporting each." *Beluca Ventures LLC v. Aktiebolag*, 622 F. Supp. 3d 806 (N.D. Cal. 2022). Ultimately, Theodorakis has failed to meaningfully engage with the required legal standard for the alter ego test or to allege specific facts to which support it. The Court thus finds he has failed to meet his burden to establish there is an alter ego relationship between the Defendants and

7

DFINITY USA such that this Court could properly exercise jurisdiction over the non-resident Individual Defendants.  Accordingly, the Court finds it lacks jurisdiction over the Individual Defendants and **GRANTS** their motion to dismiss.  Because the Court concludes the SAC should be dismissed because the Court lacks personal jurisdiction over the Individual Defendants, it need not address the Individual Defendants' additional arguments raised against the SAC.

Finally, the Court assesses whether to grant Theodorakis leave to amend. Upon dismissing a complaint, courts have discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).  To determine whether amendment would be futile, courts examine whether the complaint can be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990).  Here, Theodorakis has not met his burden of establishing jurisdiction, despite having multiple opportunities to do so by way of amending his complaint and submitting supplemental briefing.  In its discretion, the Court finds that Theodorakis has been offered sufficient opportunity to cure these defects and declines to grant him further leave to amend. *Leadsinger, Inc.*, 512 F.3d at 532.

### B. DFINITY's Motion to Dismiss

The SAC includes one cause of action against DFINITY: a new claim of securities fraud. Theodorakis's addition of this claim violates the Court's instruction that leave to amend was granted solely for the purpose of adding new jurisdictional allegations. ECF 71 at 8. Theodorakis's contention that the Court's order did "not limit the scope of amendments of claims as to" DFINITY, ECF 92 at 7, is belied by the Order's plain text:

> For the foregoing reasons, the Court GRANTS Williams and Bochsler's motion to dismiss for lack of personal jurisdiction.  As there are no remaining federal claims or diversity jurisdiction, the Court cannot exercise supplemental jurisdiction over DFINITY and therefore GRANTS DFINITY's motion to dismiss.  Leave to amend is granted solely to add new jurisdictional allegations.  Any amended complaint shall be filed by May 30, 2024.  If Plaintiff can allege personal jurisdiction over Williams or Bochsler, Plaintiff may

also include the claims against DFINITY brought under supplemental jurisdiction. ECF 71 at 8. Theodorakis could have revived the claims against DFINITY he brought in the FAC, but he was not permitted to add a cause of action for the first time in the SAC.

"[C]ourts in this district consistently strike or dismiss parties and claims that exceed the scope of an order granting leave to amend." *Strifling v. Twitter*, No. 22-CV-07739-JST, 2024 WL 54976, at *1 (N.D. Cal. Jan. 4, 2024) (collecting cases). Theodorakis argues that regardless, Defendants have taken inconsistent positions as to whether the ICP Tokens are securities, and thus "it is incumbent on this Court to put an end to Defendants' charades" by allowing his securities claim to proceed. The Court disagrees. Theodorakis elected not to bring a securities claim in the FAC, and may not do so now. Thus, the Court strikes Count Five from the SAC. As no claims against DFINITY remain, the Court need not consider DFINITY's additional arguments, and **GRANTS** its motion to dismiss with prejudice.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Individual Defendants' motion to dismiss with prejudice and **GRANTS** DFINITY's motion to dismiss with prejudice.

**IT IS SO ORDERED.**

Dated: March 14, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**